**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| EVA'S BRIDAL, LTD., an Illinois Corporation, and Said GHUSEIN, | ) ) | |
| Plaintiffs, | ) | No. 07 cv 1668 |
| v. | ) ) | Honorable John W. Darrah |
| HALANICK ENTERPRISES, INC., an Illinois Corporation, and Nayef I. GHUSEIN, | ) ) | Magistrate Judge Schenkier |
| Defendants. | ) | |

**ANSWER TO AMENDED COMPLAINT**

NOW COMES the Defendants and Counter-Plaintiffs HALANICK

ENTERPRISES, INC., and NAYEF GHUSEIN, and HALA SALMITI, by and through

their attorney, Brendan Shiller, and states as follows:

**ANSWER**

**NATURE OF ACTION**

1.  This is an action for trademark infringement under the Lanham Act, 15 USD §

    1051 et. seq.; 15 USC § 1114(a); unfair competition, dilution of a famous mark

    under the Lanham Act, 15 § 1125(c), injury to business reputation and breach of

    contract, arising from defendant's unauthorized use of the trademark "Eva's

    Bridal" and the name "Nancy Ghusein" and arising from false representations to

    manufactures (sic) and customers, and breach of contract

ANSWER:

Defendants admit that this action is purported to be brought pursuant to the above

statutes. Defendants deny all of the other factual allegations.

2.  Plaintiff, Eva's Bridal Ltd., (Eva's) is an Illinois Corporation; it is a family owned

    business that was established in 1966 by Eva Sweis and her daughter Nancy

    (sweis) Ghusein. It is the oldest bridal salon in the industry and the only one in the

    whole bridal industry that is operated by a third generation, the daughter of Said

    and Nancy Ghusein: Ronia Ghusein. The current address of the corporation is

    4811 W. 95th Street, Oak Lawn, Illinois, in County of Cook. Plaintiff Said

    Ghusein is the owner and operator of Eva's along with his daughter Ronia

    Ghusein since 1980. Nancy Ghuisen manages Eva's and she has been one of the

    leading figures in the bridal industry for many years. She had many television

    appearances, including Oprah and several interviews by the Wall Street Journal,

    Chicago Tribune and the Sun Times.

ANSWER:

    Plaintiff is not Eva's Bridal, Ltd. Plaintiff may be Eva's Bridal of Illinois, Ltd., or

Eva's Bridal of Oak Lawn, Ltd. Plaintiffs have not continuously operated various bridal

shops since 1966. It is not, however, the oldest bridal salon in the industry, nor is it the

only bridal salon that is operated by a third generation. Plaintiff Said Ghusein has not

owned and operated Eva's along with his daughter since 1980. Ronia was two years-old

in 1980. In fact, the corporation was owned and operated by Said and Nancy, until it was

revealed that Nancy was engaged in massive fraud. After these allegations of massive

fraud in 2002, Nancy and Said lost a lot of business and a lot of money. In order to

defraud the Northern District of Illinois Bankruptcy Court, the Ghusein's removed

Nancy's name from the corporate papers of the various Eva's Bridals' prior to the filing

of bankruptcy by Nancy Ghusein and Exclusives for the Bride in 06 bk 10343 (ND. IL

BK.). To this day, Nancy Ghusein continues to own and operate Eva's Bridal of Oak Lawn along with Said, in fact, if not in law. Nancy Ghusein has had many media appearances. Unfortunately most of them have not been flattering. They have instead detailed massive fraud on her part. See Group Exhibit A.

3. Plaintiffs have been selling wedding gowns, bridesmaid dresses and accessories in Cook County, Illinois since 1966. Eva's also does alterations to the dresses and provides other wedding related services.

ANSWER:

Defendants deny the first sentence, and admit the second sentence.

4. Defendant Halanick Enterprises, Inc. is an Illinois Corporation and its address is: 15641 South 94th Avenue, Orland Park, IL. County of Cook, State of Illinois 60462. It also sells wedding gowns, bridesmaid dresses and accessories in Cook County, Illinois. Defendant Nayef I. Ghusein is the owner and operator.

ANSWER:

Defendants admit that Halanick is an Illinois corporation located at the above address. As Plaintiff's know, Halanick is a partnership owned and operated by Hala Ghusein and Nayef Ghusein. Plaintiff's have informed Defendants that they purposely did not name Hala. On information and belief this was to avoid Hala's counterclaim against Said Ghusein for more than $175,000 in personally defrauded funds.

**JURISDICITON AND VENUE**

5.   This Court has jurisdiction over the subject matter of this action pursuant to 15

USC § 1121 and 28 USC § 1338(a) & (b). Personal jurisdiction in this district is

proper inasmuch as the Plaintiff and Defendant are Illinois corporations, doing

business in Cook County. Venue is proper in this district pursuant to 28 USC §

1391(b)(2).

ANSWER:

Defendants admit that jurisdiction and venue are proper.


**STATEMENT OF FACTS**

6.   Eva's Bridal LTD. has been a member of the Better Business Bureau (BBB) since

1985 and is currently in good standing. Eva's Bridal has a good record when it

comes to customer satisfaction; it won many awards including the "People's

Choice Award" and the "Best of Chicago Southland" for five consecutive years.

Plaintiffs had spent over $100,000.00 per year in advertising and promoting Eva's

Bridal's name over past thirty (30) years, and have spent millions of dollars in

doing so.

ANSWER:

Defendants admit that Plaintiff's and their various entities have been members of

the Better Business Bureau.  Defendants contend that Plaintiffs do not have a good record

when it comes to customer satisfaction.  The so-called awards that Plaintiffs "won" were

actually bought as part of an advertising promotion with the South-Town Economist.  In

fact, Defendants have at times independently participated in the exact same advertising

promotion.  When a business spends a certain amount of advertising with the South-
Town Economist, the South Town Economist then gives that business either the
"People's Choice Award" or the "Best of Chicago Southland" award.  Defendants do not
know how much Plaintiffs have spent in advertising.  Defendants do know that Plaintiffs
defrauded Defendants, as further detailed below, when billing Defendants for advertising
costs.

7.  On June 1, 1998, the President of Eva's Bridal LTD., Said Ghusein, on behalf of
    Eva's Bridal entered into a written Limited License & Asset Transfer Agreement
    (Agreement) with the President of Halanick Enterprises, Inc., Nayef Ghusein, on
    behalf of Halanick Enterprises, Inc. **Exhibit A.**

ANSWER:

Defendants admit that this agreement was entered into.  The assets that were
transferred were some of the inventory and equipment in the store located in Orland Park.
Those assets were transferred as part of a long-standing agreement between the siblings.


8.  Defendant Halanick has been permitted to use the name "Eva's Bridal" in
    accordance with the agreement Exhibit A for its business located at 15641 South
    94th Avenue, Orland Park, Illinois since June 1, 1998.

ANSWER:

The agreement speaks for itself.  Defendants were using the name "Eva's Bridal" prior to
the entering into of this agreement.

9. The terms of said Agreement, Exhibit A, is that defendant will "pay Eva's Bridal a fee of $2,000 per month for the use of Eva's Bridal's trade name." Eva's conveyed only a "limited license to use the trade name." Eva's also shared its trade secrets and trained defendants in the business and introduced defendants to Eva's vendors and opened credit lines with the vendors for defendants based on said Agreements.

ANSWER:

The document speaks for itself. There were no trade secrets shared. Defendants and Plaintiffs did work together for several years prior to, and for some time after, this agreement was entered into. Defendants did not use Plaintiffs' name or contacts to open credit lines, as Plaintiffs have a terrible reputation and bad credit in the industry.

10. Since February 2002, defendant stopped making the monthly $2,000 payments pursuant to said written agreement, Exhibit A, and plaintiffs have been demanding that defendants stop using its trade name and the name of its founder "Nancy Ghusein" with manufactures, customers and the Better Business Bureau.

ANSWER:

Beginning on August, 1998 and through February, 2002, Defendants made monthly payments to Plaintiffs of $2,000 a month. In March of 2002, Plaintiffs requested that Defendants pay a lump sum for the remaining months in the year of 2002. Defendants then paid plaintiffs $20,000 for the months of March through December 2002. See Group Exhibit B. This was around the same time that the media began detailing Nancy Ghusein's fraud. As a result of this fraud, all of Defendants' customers

received a letter telling them not to shop at any of the stores owned by N "Said, Nancy, Ghusein, and family" including the Eva's Bridal in Orland Park. See Exhibit K. It was also around this time that vendors began telling Defendants that there credit was in jeopardy because of the actions of Nancy and Said Ghusein. Consequently, Defendants stopped using the name of Nancy Ghusein in 2002 because it was necessary to distance themselves from Nancy and Said Ghusein in order to stay in business.

11. Plaintiffs also demand the return of their business situated at 15641 South 94th Avenue, Orland Park, Illinois that was conveyed via said Agreement, which is now void or breached.

ANSWER:

The agreement speaks for itself. It clearly does not convey the business itself.

12. Defendants have been making false and fraudulent representations to wholesale manufactures, customers and the Better Business Bureau (BBB) regarding its identity; in that, it is "Eva's Bridal" and that "Nancy Ghusein" is its employee.

ANSWER:

Defendants deny paragraph 12 in its entirety.

13. Defendants have been falsely representing that Plaintiff's founder, Nancy Ghusein, was in fact defendants' employee. See Exhibit B, in which defendants falsely represented to the BBB that Nancy Ghusein was its manager to win BBB

approval. In fact, Nancy Ghusien was never employed by the defendants and the defendants were never an approve member of the BBB.

ANSWER:

Defendants have strenuously worked over the last five years to make sure that all people (customers, vendors, etc.) were aware that they have nothing to do with Nancy Ghusein. Defendants have never made any representations to anyone other than that Nancy Ghusein does not work for or with them. Exhibit B is apparently a printoff from the BBB's website that Defendants have nothing to do with. Defendants are not currently members of the BBB, in that they let their membership lapse in 2003.

14. Defendants never earned the right to claim that it was approved by the BBB. In fact, it was plaintiff Eva's bridal Ltd. with only the Oak Lawn location that received the BBB membership approval.

ANSWER:

Earning the right to claim approval by the BBB consists of paying a membership fee. Defendants were members at one time. They are no longer members.

15. Defendant falsely represented that they won the BBB approval in Exhibit B to the manufactures and designers of wedding gowns and to its customers. Defendants placed false advertising using plaintiffs' logo and claiming it was the "Winner of 'Best Bridal Shop' and People's Choice Award for 5 consecutive years," which is false. Exhibit C. In fact, these awards were given to the plaintiffs and plaintiff

Said Ghusein was contacted to come and accept the awards personally in an annual ceremony.

ANSWER:

Defendants have never claimed BBB approval of anything. Plaintiff's Exhibit B was not produced by Defendants. Defendants are responsible for creating the advertisement represented in Plaintiff's Exhibit C. Defendants paid more than their fair share of the advertising costs to the South Town Economist necessary to obtain those awards, as more fully explained in the counterclaim and in the attached Group Exhibit C.

16. Moreover, defendants continues (sic) to this date, to use the reputation and good will relationship built by "Eva's Bridal" and "Nancy Ghusein" with manufactures to make purchases in the name of "Eva's Bridal" and "Nancy Ghusein." However, defendant never received authorization to use Nancy Ghusein's name and the authorization to use Eva's Bridal's name terminated in 2002. Even if the authorization did not terminate, defendants never received any authorization to use the name "Nancy Ghusein", and, as explained below, defendants never received plaintiffs' authorization to take ownership of the name "Eva's Bridal, Ltd."

ANSWER:

Defendants dispute that any good reputation or good will relationships remain, in any form, that was previously built by Nancy Ghuisen and/or Said Ghusein. The relationship that Defendants have with manufactures is completely independent of Nancy and Said Ghusein.

17. Defendants continued use of "Eva's Bridal" and "Nancy Ghusein" has damaged the good will of the names beyond repair and caused consumer confusion and dilution of plaintiff's name. Money alone cannot fully compensate for the good will and business reputation that were damaged and continues to be damaged.

ANSWER:

Defendants dispute paragraph 17 in its entirety.

18. Under said Agreement, Exhibit A, the limited license was to use the name Eva's Bridal and NOT Nancy Ghusein and it is for "as long as this agreement remains in full force and effect." This agreement was terminated in 2002 (defendants missed quite a few payments prior to 2002). Since 2002 the defendant stopped paying and since 2002 the plaintiff has been insisting that defendant stop using its trademark: "Eva's Bridal" and the name "Nancy Ghusein" and to stop making false representations, namely that it is Eva's Bridal that won BBB approval and that its manager is Nancy Ghusein to manufactures and customers and to the BBB. Exhibit B. Plaintiff Said and Nancy Ghusein had sent several "cease and desist letters" to the defendants since 2002, instructing them not to use the marks and to return the business to them.

ANSWER:

Defendants dispute paragraph 18 in its entirety.

19.  Since the Agreement, Exhibit A, is void, terminated  or breached, plaintiffs

demand the return of their business at 15641 South 94th Avenue, Orland Park,

Illinois, which was transferred pursuant to said Agreement.

ANSWER:

Defendants do not know how to respond to the bizarre, baseless legal conclusions

at the beginning of paragraph 19, but do deny that the agreement transferred the business.


20. In March 20076, the owner of Plaintiff, Said Ghusein, learned that the corporate

agent for Eva's Bridal Ltd., Mr. Paul F. Schofueld, neglected to file the annual

report with the Secretary of State and as a result the corporation was involuntarily

dissolved.

ANSWER:

Defendants dispute this paragraph.  Said Ghusein was informed of this fact in July

of 2006, when Nayef Ghusein called him to tell him that Eva's Bridal, Ltd. was

dissolved.


21. Immediately thereafter, Mr. Ghusein sought the assistance of an attorney to

reinstate Eva's Bridal Ltd.  Mr. Ghusein needed to resintate the corporation to

close on a pending business loan.  However, he was unable to reinstate it because

someone else took the name while it was dissolved.

ANSWER:

Defendants have insufficient information to either confirm or deny paragraph 21.

22. Upon investigation, it was learned that on March 20, 2007, defendant Halanick
Enterprises, Inc.'s owner, Nayef I. Ghusein, took the name of Eva's Bridal Ltd.
Nayef I. Ghusein registered his name in the Illinois Secretary of State's
Corporation File Report as the owner of "Eva's Bridal Ltd., and owner of Eva's
Brdial in Oak Law, where the Plaintiff's business has been located since 1980.
This was a willful and malicious act to further confuse the consumer, huirt the
business, and further infringe on plaintiffs' trademark.

ANSWER:

Defendants first filed paperwork with the Secretary of State in 2003, to operate
under the name of Eva's Bridal. See Exhibit D. Plaintiffs were aware of this.  In March of
2007, nearly two years after Plaintiffs' corporation had been dissolved, and nearly a year
after they were informed of this dissolution, Defendants did file papers to incorporated
under the name of Eva's Bridal, Ltd.


23. Furthermore, Nayef I. Ghusein is the brother of Said Ghusein and Nayef I.
Ghusein knew that that his brother has been using the name Eva's Bridal Ltd. in
Cook County Illinois for over 30 years. Defendant Nayef I. Ghusein was also
aware that plaintiff Said Ghusein was in the process of obtaining a loan under the
name: "Eva's Bridal Ltd."

ANSWER:

Nayef and Said are brothers.  Said has not been using Eva's Bridal Ltd. for over 30
years.  For most of that time it was Nancy that was owning and operating the company.
Nayef was not aware of Said's attempt to get a loan.

24. As a result of defendant Nayef Ghusein's actions, plaintiffs were unable to obtain a much needed loan to continue the operation of the business. This prohibited the plaintiffs from advertising and purchasing new inventory, which is the normal procedure to continue the success and growth of their business. This did result in great loss of business. Defendants' use of plaintiffs' trademark has caused plaintiffs grave hardship and resulted in irreparable harm and if defendants are not enjoined from the continued use plaintiffs' trademarks, it will result in more irreparable harm and complete loss of business.

ANSWER:

Defendants deny paragraph 24 in its entirety.

25. Unless the defendants are ordered to stop using plaintiffs' names, "Eva's Bridal" "Nancy Ghusein" and relinquish ownership of the name "Eva's Bridal Ltd." and stop making false advertisements, representations to manufactures, customers and the BBB, the plaintiffs will continue to sustain irreparable injury to their business and reputation.

ANSWER:

Defendants deny paragraph 25 in its entirety.

## FIRST CAUSE OF ACTION

## FEDERAL TRADEMARK INFRINGEMENT

26. Plaintiffs repeat paragraphs 1 through 25 as though stated herein.

ANSWER:

Defendants repeat answers 1 through 25 as though stated herein.


27. Defendants' aforementioned acts constitute trademark infringement in violation of

the Lanham Act, 15 USC § 1114.

ANSWER:

Defendants deny paragraph 27.


28. Plaintiffs' marks, "Eva's Bridal" and "Nancy Ghusein," and "Eva's Bridal Ltd."

are trademarks by use in Cook County Illinois. Plaintiff is the owner of the marks

and has exclusive right to use the marks in commerce in connection with wedding

gowns and accessories sale and service under the Lanham Act, 15 USC § 1115.

ANSWER:

Defendants deny paragraph 28.


29. Since 2002 Defenant's wrongful use of the name "Eva's Bridal" and

misappropriation of the Eva's Bridal, its awards, BBB approvale and its founder

name, Nancy Ghusein, have caused confuseion with manufactures and customers,

or alternatively, is destroying the origin-identifying function of the marks.

Defendants' actions constitute trademark infringement in violation of section

32(a) of the Lanham Act, 15 USC § 1114.

ANSWER:

Defendants deny paragraph 29.

30. As a proximate result of defendants' actions, plaintiffs suffered and will continue to suffer great damage to its business, goodwill, reputation, profits and the strength of its trademarks. The injury to plaintiff is and continues to be ongoing and irreparable.

ANSWER:

Defendants deny paragraph 30.

31. An award of monetary damages alone cannot fully compensate plaintiff ofr its injuries and plaintiffs lack an adequate remedy at law.

ANSWER:

Defendants deny paragraph 31.

32. Plaintiffs are entitled to a permanent injunction against defendants, as well as all other remedies available under the Lanham Act, including, but not limited to, compensatory damages, treble damages, disgorgement of profits and costs and attorney's fees.

ANSWER:

Defendants deny paragraph 32.

## SECOND CAUSE OF ACTION

## FEDERAL UNFAIR COMPETITION UNDER LANHAM ACT § 43

33. Plaintiffs repeat paragraphs 1 through 25 as though stated herein.

ANSWER:

Defendants repeat answers 1 through 25 as though stated herein.

34. Defendants' use of "Eva's Bridal" and "Nancy Ghusein" marks to promote,
market and sell its products and services constitutes unfair competition pursuant
to 15 USC § 1125(a). Defendants' use of said marks is likely to cause confusion,
mistake and deception among consumers. Defendant's unfair competition has
caused and will continue to cause damage to plaintiff and is causing irreparable
harm to plaintiff for which there is no adequate remedy at law.

ANSWER:

Defendants deny paragraph 34.

### THIRD CAUSE OF ACTION

### DILUTION OF FAMOUS MARKS

35. Plaintiffs' repeat paragraphs 1 through 25 as though stated herein.

ANSWER:

Defendants repeat answers 1 through 25 as though stated herein.

36. Defendants' use of plaintiffs' marks is and will continue to result in the dilution pf
the distinctive nature and the marks, in violation of 15 USC § 1125(c).

ANSWER:

Defendants deny paragraph 36.

37. Plaintiffs' marks are of enormous value that took over thirty years to create. Defendants' use of these marks has and will continue to cause irreparable harm and the blurring of the marks.

ANSWER:

Defendants deny paragraph 37.

## FOURTH CAUSE OF ACTION

## COMMON LAW INJURY TO BUSINESS REPUTATION

38. Plaintiffs repeat paragraphs 1 through 25 as though stated herein.

ANSWER:

Defendants repeat answers 1 through 25 as though stated herein.

39. Defendants' use of "Eva's Bridal" and "Nancy Ghusein" marks creates irreparable injury to plaintiffs' business reputation because persons encountering plaintiffs and their products and services will believe plaintiffs are related to defendants and their products and services. This will not only further confuse the consumers and vendors, but any adverse reaction by the public to defendants and the quality of its products will injure plaintiffs' reputation and goodwill.

ANSWER:

Defendants deny paragraph 39.

## FIFTH CAUSE OF ACTION

## BREACH OF A WRITTEN CONTRACT

40. Plaintiffs repeat paragraphs 1 through 25 as though stated herein.

ANSWER:

Defendants repeat answers 1 through 25 as though stated herein.

41. The elements that constitute a breach of contract are: (1) an offer and acceptance; (2) consideration; (3) definite and certain terms of the contract; (4) plaintiff's performance of all required contractual conditions; (5) defendant's breach of the terms of the contract; and (6) damage resulting from the breach.

ANSWER:

Defendants deny that these are the elements for common law breach of contract in Illinois.

42. An offer and acceptance was made as described in Exhibit A. Defendants offered to pay $2,000 per month for the limited use of plaintiffs' trade name, Eva's Bridal, and the transfer plaintiffs business at 15641 South 94th Avenue, Orland Park, Illinois, to defendants. Consideration existed in that defendant paid $10 for said assets, which were worth more than half a million dollars. The agreement was made only if defendants agreed to pay $2,0000 per month for the use of plaintiffs' name.

ANSWER:

Defendants deny paragraph 42.

18

43. Definite and certain terms exist as set forth in the written agreement, Exhibit A.

Plaintiff performed all conditions by permitting defendant to use its trade name.

ANSWER:

Defendants deny paragraph 43.


44. Defendants breached of the terms of the agreement by not paying the $2,000 per

month, while continuing to profit from the business and the use of plaintiffs'

trademarks and making false and fraudulently use of plaintiff's founder name,

Nancy Ghusein, with manufactures, customers and the Better Business Bureau for

their own benefit, and therefore unjustly enriching themselves.

ANSWER:

Defendants deny paragraph 44.


45. Damages resulted, in that, plaintiff's trade marks and good will were damaged

and plaitniff's use of its founder name was used without plaintiff's authorization;

plaintiff did not receive its $2,000 per month for the use of the mark "Eva's

Bridal." Since 2002, and together with missed payments prior to 2002, defendant

owes Eva's $240,000 in arrears under the contract. Plaintiffs' were also damaged

by not receiving the contracted benefits for transferring their business at 15641

South 94th Avenue, Orland Park, Illinois.

ANSWER:

Defendants deny paragraph 45.

46. WHEREFORE, plaintiffs pray for the following relief:

1.  a permanent injunction against defendants directing them to stop using the names "Eva's Bridal" and "Nancy Ghusein;" and to relinquish ownership and use of the name "Eva's Bridal Ltd."

2.  an award of damages to compensate the plaintiffs for arrears under the contract for $240,000; plus pre-judgment interst at 5%;

3.  the return of plaintiffs business and assets at 15641 south 94th Avenue, Orland Park, Illinois, which was transferred pursuant to said Agreement, Exhibit A;

4.  an award of punitive damages in an amount this Court deems just;

5.  an award for attorney's fees and any other and further relief this court deems equitable and proper.

ANSWER:

WHEREFORE, defendants pray that all of Plaintiffs' prayers for relief be denied.

## AFFIRMATIVE DEFENSES

Defendants incorporate herein each allegation contained in its responses to the Complaint contained in paragraphs 1 through 46 above, as well as its own statement of facts in the counterclaim below. As separate affirmative defenses to the Complaint, Defendants further allege:

1. Plaintiffs' claims are barred because Defendant had an express license to use the name Eva's Bridal.

2. In the alternative, Plaintiffs' claims are barred because Defendants had an implied license to use Eva's Bridal

3. Plaintiffs' claims are barred because one or more of its agents gave, at various times, approval for the use of the name Eva's Bridal, and these agents, namely Said and Nancy Ghusein had either express and/or apparent authority to give such authorization.

4. Plaintiffs' claims are barred by the doctrine of acquiescence, as more fully supported by the facts detailed above and below.

5. Plaintiffs' claims are barred by the doctrine of equitable estoppel, as more fully supported by the facts detailed above and below.

6. Plaintiffs' claims are barred by the doctrine of laches, as more fully supported by the facts detailed above and below.

7. Plaintiffs' claims are barred by the doctrine of unclean hands, as more fully supported by the facts detailed above and below.

9. Plaintiffs have waived any right to obtain the requested relief as a result of its own acts, conduct and/or omissions.

10. Plaintiffs' claims are barred because it consented to all the conduct at issue.

11. Each and everyone of Plaintiffs' claims fail to state a cause of action.

12. Plaintiffs failed to mitigate damages.

13. Plaintiffs' claims are barred because of their own unjust enrichment.

14. Certain counts are barred by the applicable statutes of limitations.

15. Plaintiffs abandoned any alleged ownership in any copyright, trademark, and/or trade dress at issue in this case.

16. Defendants' conduct constitutes fair use, thereby barring this claim.

17. The Complaint is barred in whole or in part because any alleged trademark, and/or trade dress at issue in this case is functional and is thus incapable of legal protection under the law of trademark or unfair competition.

18. The Complaint is barred in whole or in part because any alleged trademark, and/or trade dress at issue in this case lacks secondary meaning and is thus incapable of legal protection under the law of trademark or unfair competition.

19. The Complaint is barred in whole or in part because any alleged copyright, trademark, and/or trade dress at issue in this case has been improperly registered and/or any attempt to obtain state or federal rights by registering the same is ineffective, and is thus incapable of legal protection under the law of trademark or unfair competition.

20. Plaintiff will be unable to prove a legal or factual basis for a claim for punitive or treble damages.

21. The defendant's acts were not the actual and/or proximate cause of any damages allegedly suffered by Plaintiff, and Plaintiff's alleged injuries are instead attributable to Plaintiff's own acts.

22. The loss, injury, or damage, if any, incurred by Plaintiff was the result of superseding or intervening causes arising from negligent or willful acts or omissions by parties which defendants neither controlled nor had the right to control, and said losses, injuries, or damages were not proximately or legally caused by any act, omission, or other conduct of the defendants.

23. The Complaint, to the extent that it seeks equitable relief, is barred because plaintiff has an adequate remedy at law, and thus is not entitled to a decree in equity.

24. Plaintiff lacks standing to assert the above claims.

25. Defendants have taken no action designed to cause confusion with Plaintiffs' alleged trade mark or trade dress.

26. Count 1 is barred because Section 1114 remedies are available to those who have a registered trade mark, and Plaintiffs do not have a registered trade mark.

27. Count 2 fails to state a cause of action, because Plaintiff has not pled that the trade dress was not functional.

28. Count 3 is barred because "Eva's Bridal" is not widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's alleged owner.

## Counter Claim

Individual Defendants Nayef Ghusein, and Hala Salmiti, as individuals and as officers of Halanick Enterprise, Inc., complain against Plaintiff Said Ghusein and Eva's Bridal of Illinois, Ltd, and in support states as follows.

### Jurisdiction

1. This Court has jurisdiction over this action under the provisions of the Declaratory Judgments Act, 28 U.S.C. §§ 2201 and 2202, and under 28 U.S.C. § 1338(a), in that the cause of action arises under the trademark laws of the United States. Jurisdiction is also proper under 28 U.S.C. § 1331 (federal question). This

Court has supplemental jurisdiction over the claims alleging violations of state law pursuant to 28 U.S.C. §§ 1338(b) and 1367(a).

**Parties**

2.  Nayef Ghusein is a named defendant in this case. He is a partner in Halanick Enterprises Inc. (the "nick" in "Halanick"), and is the brother of Said Ghusein. He resides and conducts business in the Northern District of Illinois.

3.  Hala Salmiti is the sister of both Nayef and Said, and is the managing partner in Halanick Enterprises (the "hala" in "Halanick"). She resides and conducts business in the Northern District of Illinois.

4.  Plaintiff/Counter-Defendant Said Ghusein (known as "Sam" to family) is the legal owner of Eva's Bridal of Illinois, Ltd. He lives and conducts business in the Northern District of Illinois.

5.  Nancy Ghusein is the wife of Said, and is the owner in fact of Eva's Bridal of Illinois, Ltd.

**Background**

6.  When Said married Nancy, she was already working in the family bridal gown and accessories business. Nancy's family, along with some help from Nancy and Said, eventually built the business into a multi-million dollar empire with 13 stores.

7.  In January of 1988, Nayef, who has a degree in accounting, began working at an Eva's Bridal in Lansing, Illinois. In January of 1989, Hala, who has a degree in marketing, and Nancy Ghusein opened the Eva's Bridal in Orland Park together. Nancy was the owner, and Hala ran the day-to-day operations. After about a year

of working together, it became clear that Hala and Nancy could not work together. In November of 1990, Nayef came to the store in Orland Park, and Nayef and Hala ran the store together. From November 1990 until the present, Nayef and Hala had sole control over the day-to-day operations of the store in Orland Park.

8. Nayef and Hala agreed to run the Orland Park store as a quasi-franchise with the understanding that this store would eventually become Nayef's and Halla's. See Exhibit E. Nayef and Hala loved, admired and respected their brother.

9. Over the next seven years, Nayef and Halla ran the Orland Park store, with most of the profit going to Said and Nancy.

10. In 1998, the siblings agreed that Nayef and Hala would take over the store, but would still supply a steady income to Said and Nancy, in the form of a "license" fee. As part of this new arrangement, Hala and Nayef formed Halanick. See Exhibit F. Hala and Nayef also transferred all obligations for the store to themselves personally. See e.g. Exhibit G.

11. The understanding of all the parties (as expressed by Plaintiff's Exhibit A) was that the business itself was being transferred for $10 and for the seven years of work that Nayef and Hala had done in growing the Orland Park business. It was understood, however, that Nayef and Hala would provide $2,000 a month to Said and Nancy as a license fee for use of the Eva's Bridal name.

### The Defrauding of Halanick from 1998 to 2002

12. Almost immediately, Said and Nancy began defrauding Halanick Enterprises.  In
1995, Said approached Nayef and Hala and said that he had entered into an
agreement with Edward Fox Photography to set up booths at all of the Eva's
Bridal's including Halanick's Orland Park store.  Said told Nayef and Hala that
they would receive a portion of the fee from Edward Fox proportionate to the
amount of space that the Orland Park store provided, relative to all the other Eva's
Bridal stores.

13. As a result of this three-way arrangement, Edward Fox began using Halanick's
space as part of a global lease agreement with Eva's Bridal.  Edward Fox paid a
monthly rent to Said and Nancy, who in turned paid a portion to Halanick.
During this time, Said and Nancy mislead Hala and Nayef as to the amounts being
paid and the proper portion owed Halanick.

14. This arrangement continued until June, 2007.  In November, 2006, Nayef had a
conversation with Said, after the instant complaint was initiated, Nayef had a
conversation with principals from Edward Fox and first learned the extend of the
fraud.  At that time, Nayef asked Edward Fox to move.  In 1998, Said and Nancy
failed to make payments of $8,250 to Halanick for the space leased by Edward
Fox.  From 1999 through 2006, Said and Nancy failed to make payments of
$18,000 per year for space leased by Edward Fox.  In the first half of 2007, Said
and Nancy failed to make payments of $9,000 to Halanick for space leased by

Edward Fox.  All told, Halanick Enterprises was defrauded of $161,250.00 by Said and Nancy as a result of the three-way agreement with Edward Fox.

15. In addition to this fraud, in 2002, Nayef and Hala learned that Said and Nancy were defrauding them in the joint advertising costs.

16. in 1998, Said and Nancy came to Nayef and Hala, and suggested that they pool their advertising resources.  Said and Nancy told Nayef and Hala that they would handle advertising for both their stores and Halanick's store, and by advertising together, the cost would be less.  Said and Nancy told Nayef that they would just bill them for their portion of the advertising costs—or one-seventh of the total costs, since at the time the advertising was for seven stores.  Between mid-1998 and early 2002, Halanick Enterprise gave Eva's Bridal and Said and Nancy $111,944.76 in reimbursement costs for advertising.

17. In January 2002 (after various red flags had been raised regarding the manner that Said and Nancy conducted business), Nayef contacted Brides Magazine directly to find out what the advertising costs were.  At this point, Nayef learned that Said and Nancy were having Halanick pay for most or all of the advertising that was occurring for all of Eva's Bridals.

18. As a result of this conduct, Halanick was defrauded of $111,944.76

19. It was around this same time that the news stories regarding Nancy's fraudulent conduct at the Marshall Fields store began to hurt both parties business.  This was also around the same time that many vendors and manufacturers began requiring up-front payments from Halanick because Nancy and Said had defaulted on various credit lines.

20. The only way for Halanick Enterprise to stay in business was to conduct a concerted campaign, with both customers and vendors, to separate itself from Eva's Bridal and Said and Nancy.  Hala personally talked to every customer, , that she could get a hold of to assure them that they were not affiliated with Nancy Ghusein.

21. Nayef and Hala talked to every vendor and manufacturer to assure them that they were not affiliated with Nancy Ghusein.  Throughout 2002 and 2003, it became regular practice of Halanick to forward their corporate papers to customers to show that Nancy Ghusein was not affiliated with them.

22. It was because both of what Nayef learned from Brides Magazine, but also because of the bad press for Nancy Ghusein that Hala and Nick did everything to disassociate their business from Nancy and Said, such as stopping the joint advertising, letting their BBB membership lapse, and informing Said and Nancy that they were ending the licensing agreement.

23. But, the siblings were still family, and still remained in contact.  Therefore, Hala and Nayef continued to help out Said from time to time.


**Fraud from 2002-2005**

24. After the stories about Nancy Ghusein broke, and as Said and Nancy's bad credit history continued to be exposed, Nancy and Said's business was in bad shape.  As a result, Said would often come to Nayef for help.

25. The help he sought most often was that Halanick would pay one of Eva's vendors for merchandise (because Eva's Bridal could not get credit), as an interest free

loan. Eventually Eva's would cut Halanick a check. Inevitably, however, several of the checks from Said or Nancy to Halanick bounced. And, in certain cases, Said and Nancy simply never paid the loans back.

26. Between 2002 and 2005, Halanick loaned Nancy and Said $37,579.84 in the form of payments to merchants that was simply never paid back. Between 2002 and 2005, Halanick loaned Nancy and Said $45,826.55 that was paid back with bounced checks. See Group Exhibit H.


**Said's Defrauding of Hala**

27. In May, of 2002, still reeling from the drastic business loss as a result of the 2002 bad press, Said came to Hala and her husband and asked for a $135,000 personal loan. After much discussion. Said told Hala that this was different than business. That this was about personal survival and that he knew he was taking the money from her personally, and that it would be repaid. See Group Exhibit I. Hala and her husband gave Said $60,000 in money from their savings (in four different payments), and took out an equity loan for $75,000 to come up with the rest of the money. See Group Exhibit I.

28. Hala and her husband have continued to make payments on the equity loan, and have yet to received 3 payments from Said.

**Said's Defrauding of Nayef**

29. Said's borrowing habits apparently go back a long way. At various times over the last 13 years, Said has approached Nayef about a "cash flow problem" and requested small personal loans. At first, Said would pay off a portion. Later he

would not pay off any. Over this period, the small personal loans added up to $116,000, of which only $37,500 was paid back. See Group Exhibit J.

## Count 1-Declaratory Relief

30. Counter-Plaintiffs incorporate all previous allegations in both the responses and in the counterclaim.

31. Counter-Plaintiffs acted in good faith in entering into the licensing agreement with Eva's Bridal. Counter-Plaintiffs reasonably expected Counter-Defendants to use their best efforts to maintain the goodwill and good reputation of "Eva's Bridal."

32. Instead, Counter-Defendants took several actions, as detailed above, to destroy the good reputation of this name. In addition, after being informed that Halanick would no longer have a business relationship with Counter-Defendants, but would continue to operate under the name of Eva's Bridal (See Ex. D), Counter-Defendants took no action.

33. Counter-Defendants acts and omissions constituted an abandonment of any right to use the name Eva's Bridal. Counter-Defendants continued to abandon Eva's Bridal, when they allowed their corporate charter to be dissolved.

34. Counter-Defendants were informed of this dissolution, but took no action to fix it.

35. Nearly a year after Counter-Plaintiffs informed Counter-Defendants of the dissolution, Counter-Plaintiffs, believing that Counter-Defendants had abandoned the name, incorporated under the name.

36. For the foregoing reasons, Counter-Plaintiffs prays that this court enter judgment declaring that Counter-Defendants abandoned "Eva's Bridal".

## Count II-Breach of Contract

37. All previous paragraphs are re-alleged and incorporated.

38. The parties entered into a valid agreement whereby Counter-Plaintiffs would pay $2,000 for use of the name of Eva's Bridal, and Counter-Defendants would use their best efforts to maintain the good name and reputation of Eva's Bridal.

39. Almost immediately, Counter-Defendants took various actions that destroyed the good name and reputation of Eva's Bridal, thereby breaching their obligations under the contract.

40. As a direct and proximate result of this breach, Halanick Enterprise suffered a dramatic loss of business in early 2002.

41. For the foregoing reasons, Counter-Plaintiffs request a judgment in the amount equivalent to the profits lost as a result of Counter-Defendants breach.

## Count III—Fraud Against Halanick, 1998-2002

42. All previous paragraphs are re-alleged.

43. Halanick reasonably relied upon Said's and Nancy's statements regarding the funds being received by the photographer, and the cost of advertising.

44. Reliance on these promises were justified and reasonable.

45. These statements were clearly lies, and meant to mislead Halanick.

46. Halanick's reliance on these lies cost Halanick more than $173,000.

47. Consequently, Halanick prays that this court entered a judgment against Said and Nancy for $173,000 plus interest, and all other relief this court deems necessary..

### Count IV—Fraud Against Halanick, 2002-2005

48. All previous paragraphs are re-alleged.

49. Halanick reasonably relied upon Said's and Nancy's statements regarding their intention to pay back the various loans made via payments to Said's and Nancy's vendors.

50. Reliance on these promises were justified and reasonable.

51. It is now clear that Said and Nancy never intended to pay back these loans, as is evinced by the bounced checks.

52. Halanick's reliance on these lies cost Halanick more than $$83,000.

53. Consequently, Halanick prays that this court entered a judgment against Said and Nancy for $83,000 plus interest, and all other relief this court deems necessary.

### Count V—Fraud Against Nayef Ghusein

54. All previous paragraphs are re-alleged.

55. Nayef reasonably relied upon Said's statements regarding the paying back of the personal loans

56. Reliance on these promises were justified and reasonable.

57. These statements were clearly lies, and meant to mislead Nayef.

58. Nayef's reliance on these lies cost Nayef $123,401.69

59. Consequently, Nayef prays that this court entered a judgment against Said for $123,401.69 plus interest, and any other relief this Court deems just and fair.

### Count VI—Fraud Against Halla Ghusein

60. All previous paragraphs are re-alleged.

61. Hall reasonably relied upon Said's statements regarding the paying back of the personal loan.

62. Reliance on these promises were justified and reasonable.

63. These statements were clearly lies, and meant to mislead Halla.

64. Halla's reliance on these lies cost Halla nearly $170,000 when interest on the equity loan is included.

65. Consequently, Halla  prays that this court entered a judgment against Said for $173,000 plus interest, and any other relief this Court deems just and fair.

**Count VII-Judgment on the Note**

66. All previous paragraphs are re-alleged.

67. Said signed a promissory note to repay the $135,000.

68. The note is enforceable and valid.

69. Halla has made several demands for repayment on the note.

70. Consequently, Halla prays that this court entered a judgment against Said for $135,000 plus interest, and any other relief this Court deems just and fair.

Respectfully submitted,

/s/ Brendan Shiller /s/

Law Office of Brendan Shiller, LLC
4554 N. Broadway, Suite 325
Chicago IL 60640

## CERTIFICATE OF SERVICE

I, Brendan Shiller, an attorney, hereby certify that I have caused true and correct copies of the above and foregoing **ANSWER**, to be sent via U.S. First Class Mail to:


Maurice J Salem
Salem Law Office
7156 West 127th Street
Suite B-149
Palos Heights, IL 60463
(708) 277-4775
Email: salemlaw@comcast.net


By: /s/ Brendan Shiller /s/
Brendan Shiller
Law Office of Brendan Shiller, LLC
4554 N. Broadway, Suite 325
Chicago IL 60640