# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| EVA'S BRIDAL LTD. and )<br>SAID GHUSEIN, )<br>)<br>Plaintiffs, )<br>) No. 07 cv 1668<br>)<br>v. ) Judge John W. Darrah<br>)<br>HALANICK ENTERPRISES, INC. and )<br>NAYEF I. GHUSEIN, )<br>)<br>Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Eva's Bridal Ltd. and Said Ghusein, filed suit against Defendants, Halanick Enterprises, Inc. and Nayef I. Ghusein. Defendants counterclaimed, asserting seven causes of action, including a prayer for declaratory relief, breach of contract, four counts of fraud, and a prayer for judgment on a promissory note. Presently pending before this Court is Plaintiffs' Motion to Dismiss Defendants' Counterclaims.

## BACKGROUND

A reading of Defendants' Counterclaims supports the following summary of the alleged conduct of the parties.

Eva's Bridal, Ltd. ("Eva's") is a bridal salon, which sells wedding gowns, bridesmaid dresses and accessories and provides other bridal services, at several locations within Illinois. Said Ghusein ("Said") is the legal owner of Eva's and has operated the business with his wife, Nancy Ghusein ("Nancy"), for several years. Halanick Enterprises, Inc. ("Halanick") also operates a retail bridal salon, which sells wedding gowns, bridesmaid dresses and accessories and provides other bridal

services. Halanick is under the ownership of Nayef I. Ghusein ("Nayef") and Hala Ghusein ("Hala"), managing partner.

In 1989, Hala and Nancy opened an Eva's Bridal store in Orland Park, Illinois. In 1990, Nancy left the Orland Park store; and Nayef began running the store with Hala. From 1990 until present, Nayef and Hala have been in control of the day-to-day operations of the Orland Park store.

In 1998, Nayef and Hala entered into a licensing agreement with Eva's under which they assumed sole control of the Orland Park store and were licensed to use the "Eva's Bridal" name for a monthly fee of $2,000. In addition, Nayef and Hala paid $10 for the transfer of the business. The agreement specified that Nayef and Hala would form Halanick and that Eva's would use its best efforts to maintain the good name and reputation of "Eva's Bridal."

Prior to the licensing agreement between Eva's and Halanick, Eva's entered into a rental agreement with Edward Fox Photography ("Fox"); the agreement provided Fox space within Eva's stores. Based on that agreement, Halanick was to receive a portion of the fee paid by Fox, proportionate to the amount of space provided by Halanick relative to the other Eva's locations. In November 2006, after speaking with principals from Fox, Halanick learned that Eva's had failed to pay Halanick $161,250.00 owed under the agreement for the period from 1998 to 2007.

During that time, Eva's and Halanick entered into a joint advertising agreement. The agreement provided that all Eva's stores (seven at the time, including the Halanick Orland Park store) would pool their money in order to reduce the costs of advertising. Under the agreement, Eva's managed the advertising, and Halanick was to pay one seventh of the costs. From 1998 to 2002 Halanick paid Eva's $111,944.76 pursuant to this agreement.

In January of 2002, Halanick contacted Brides Magazine in order to determine the costs of advertisements that Eva's had purchased. Halanick learned that it had paid most or all of the costs of the advertising campaigns, rather than the one seventh stated in the agreement.

During the same time, Nancy and Eva's began to develop a poor reputation within the industry. Eva's defaulted on several lines of credit; and as a result, many manufacturers and vendors demanded that Halanick make up-front payments for any merchandise it purchased. Halanick also provided Eva's with loans for the purchase of merchandise from vendors that would not extend lines of credit to Eva's. From 2002 to 2005, Halanick provided Eva's with $83,406.39 in such loans. Other than several checks that were returned for insufficient funds, Eva's made no attempts to repay the loans.

Halanick later attempted to distance itself from Eva's. Halanick gave assurances to its customers, manufacturers, and vendors that it was no longer affiliated with Eva's or Nancy. Halanick also terminated the joint advertising agreement with Eva's, allowed its Better Business Bureau membership to lapse, and informed Eva's that it was ending the 1998 licensing agreement. After the dissolution of Eva's in 2006, Halanick filed with the Illinois Secretary of State, in March 2007, to incorporate under the name "Eva's Bridal, Ltd."

Aside from business loans, Said requested several personal loans from both Nayef and Hala. In May of 2002, Said requested that Hala loan him $135,000. Hala provided Said with $60,000 from personal savings and another $75,000 from an equity loan (interest has accrued on the loan) in return for a promissory note. To this date, Said has made three payments to Hala.

From 1994 to 2007, Said also requested several loans from Nayef. In total, Said has failed to repay $78,500.

# ANALYSIS

Plaintiffs seek to dismiss all seven counts of Defendants' counterclaim. In ruling on a motion to dismiss, the court must accept as true all well-pleaded factual allegations and draw reasonable inferences in favor of the plaintiff. *Sprint Spectrum L.P. v. City of Carmel, Ind.*, 361 F.3d 998, 1001 (7th Cir. 2004) (*Sprint*). Federal Rule of Civil Procedure 8(a)(2) requires that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To meet Rule 8(a)(2)'s requirements, "the complaint must describe the claim in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, __ U.S. __, __, 127 S. Ct. 1955, 1964 (2007), *quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957) (alteration in *Bell Atlantic*). "Second, its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'; if they do not, the plaintiff pleads itself out of court." *E.E.O.C. v. Concentra Health Serv., Inc.*, 496 F.3d 773, 767 (7th Cir. 2007).

*Count I: Declaratory Relief*

Plaintiffs seek to dismiss Count I for failure to state a claim. Count I prays for a declaratory judgment that Plaintiffs abandoned the trade name "Eva's Bridal." Under the Lanham Act, a mark is deemed abandoned if "any course of conduct of the owner, including acts of omission as well as commission causes the mark . . . to lose its significance as a mark." 15 U.S.C. § 1127(2) (2007).

Defendants allege that Plaintiffs, owners of the mark "Eva's Bridal," caused the mark to lose significance by taking "several actions to destroy" its good name and reputation. Additionally,

Count I alleges that Plaintiffs took no action to prevent Defendants from operating under the name after business relations had ceased between the parties. Nor did Plaintiffs attempt to remedy the dissolution of their corporate charter.

Based on the above, Defendants have sufficiently pled a cause of action for declaratory judgment in Count I.

*Count II: Breach of Contract*

Plaintiffs seek to dismiss Count II for failure to state a claim. Count II alleges a breach of contract by Plaintiffs. The claim is sufficiently pled if it is supported by facts that, if taken as true, at least plausibly suggest that the claimant is entitled to relief. *E.E.O.C.*, 496 F.3d at 766.

The counterclaim sufficiently alleges the terms of a contract and its breach by Plaintiffs. It notifies Plaintiffs of the principal events and provides sufficient facts, if taken as true, that would allow for the determination that the contract was breached. Specifically, the counterclaim alleges that in 1998, Eva's and Halanick entered into a licensing agreement whereby Halanick would pay Eva's $2,000 monthly in exchange for the use of the name "Eva's Bridal." Pursuant to the agreement, Eva's was to "use their best efforts to maintain the good name and reputation of Eva's Bridal."

Count II alleges that Plaintiffs "[a]lmost immediately... took various actions that destroyed the good name and reputation of Eva's Bridal," including the failure to repay debts on lines of credit manufacturers and vendors extended to Eva's. As a result, Halanick was required to make up-front payments for merchandise purchased from certain manufacturers and vendors and "suffered a dramatic loss of business in early 2002."

Based on these allegations, Count II sufficiently alleges a cause of action for breach of contract against Plaintiffs.

*Counts III, IV, V, and VI: Fraud*

Counts III, IV, V, and VI of the counterclaim allege acts of fraud. Claims in fraud must meet the specificity requirements of Federal Rule of Civil Procedure 9(b). Rule 9(b) requires a claimant alleging fraud to state the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the claimant. *VI Com Inc. v. Harbridge Merchant Serv., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994).

Counts III and IV allege fraud against Plaintiffs with regard to Halanick during the periods of 1998 to 2002 and 2002 to 2005, respectively. Count V alleges fraud with regard to Nayef; and Count VI, with regard to Hala. The requisite elements of common-law-fraud are: (1) an intentional false statement of material fact; (2) the party to whom the statement was made had the right to rely upon it; (3) the statement was made for the purpose of inducing reliance thereon; and (4) reliance by the person to whom the statement was made led to that person's injury. *Industrial Specialty Chemicals v. Cummings Engine Co.*, 902 F. Supp. 805, 813 (N.D. Ill. 1995).

Plaintiffs argue that Defendants have failed to sufficiently plead all the elements of fraud in Counts III and IV. Defendants, however, allege that Eva's intentionally made false statements to Halanick regarding the funds being received by Fox, the costs of advertising, and Eva's intention to repay loans made by Halanick. Defendants allege further that Eva's intended Halanick to rely upon those statements, and Halanick did rely upon the statements to its detriment.

Plaintiffs also argue that the statements alleged in Counts III and IV are not sufficient to maintain causes of action for fraud because they describe future performance. The alleged statements regarding the funds being received by Fox were not statements about future performance but, rather, were statements about the then-existing agreement between Eva's and Fox. Similarly, the statements about advertising were about the then-existing costs of the advertisements. Assuming the statements do describe future performance, there is an exception to the general rule that denies recovery for fraud based on a false representation of intention or future conduct. "[W]here the false promise or representation of future conduct is alleged to be the scheme employed to accomplish the fraud," statements about intention or future conduct are sufficient. *Steinberg v. Chicago Medical School*, 69 Ill. 2d 320, 334 (1977). This exception is supported in the counterclaim for fraud regarding the Fox and advertising agreements and applies to Eva's statements about repaying the loans Halanick made to Eva's.

Count V alleges that Said falsely stated an intention to repay Nayef for several personal loans Nayef made to Said. Plaintiffs again argue that the statements are insufficient because they describe future performance. The exception to the general rule is, however, applicable to these statements based on the allegations of the counterclaim.

Count VI alleges that Said falsely stated an intention to repay Hala for a personal loan Hala made to Said. These alleged statements are also sufficiently pled under the above-stated exception.

Plaintiffs argue further that regardless of the sufficiency of the allegations, Hala is not a party to the present action and, therefore, is unable to counterclaim against Plaintiffs. Pursuant to Federal Rule of Civil Procedure 13(h) "[p]ersons other than those made parties to the original action may be made parties to a counterclaim . . . accordance with . . . Rules 19 and 20." Hala is properly joined

under Rule 19(a)(2)(i) because she "claims an interest relating to the subject of the action" (i.e. she is part owner of Halanick) and disposition in her absence may impair her ability to protect that interest.

In the alternative, Plaintiffs argue that Hala has failed to properly serve process. There is, however, no requirement that Hala separately serve process upon Plaintiffs – Hala's counterclaim was properly served with Defendants' Answer.

Based on the above, Defendants have sufficiently pled causes of action in fraud in Counts III, IV, V, and VI.

*Count VII: Judgment on the Note*

Count VII prays for judgment on a note in the amount of $135,000 for the personal loan Hala made to Said. Plaintiffs do not argue that Defendants have insufficiently pled this count but, rather, that the note is invalid for several reasons, including the lack of an exact sum to be paid and an exact time for repayment. Defendants, however, allege the terms of the note, including the sum to be repaid, and attached the alleged note to the counterclaim as an exhibit. *See Sharif v. International Development Group Co., Ltd.*, 399 F.3d 857, 864 (7th Cir. 2005) ("the Illinois Supreme Court has defined a promissory note as 'a written promise by one person to pay another person therein named, or order, a fixed sum of money at all events and at a time specified therein or at a time which must certainly arrive.'").

Accordingly, Defendants have sufficiently pled a cause of action for judgment on the note. Whether the note is valid goes to the merits of the claim and is not properly decided at this stage.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Dismiss Counts I, II, III, IV, V, VI, and VII of Defendants' Counterclaim is denied.

Dated: January 24, 2008

JOHN W. DARRAH
United States District Court Judge