**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Eva's Bridal Ltd., an Illinois corporation, and Said Ghusein, | ) ) | |
| Plaintiffs, | ) | **Case No. 07-cv-1668** |
| | ) | |
| v. | ) | Judge John W. Darrah |
| | ) | |
| Halanick Enterprises, Inc., an Illinois Corporation, and Nayef I. Ghusein, | ) ) | Magistrate Judge Schenkier |
| Defendants. | ) | |

**PLAINTIFFS' REPLY AND AFFIRMATIVE DEFENSES
TO DEFENDANTS' COUNTERCLAIM**

Now comes the plaintiffs, Eva's Bridal Ltd. and Said Ghusein, by and through their attorney, Maurice J. Salem, Reply to defendants' Counterclaims and assert Affirmative Defenses. The defendants in this action are Halanick Enterprises, Inc., and Nayef I Ghusein. Hala Sarmiti, in her individual capacity, is not a defendant in this action and thus any claims that she raises as counterclaims in this action are not applicable. However, they will be addressed.

1. Plaintiffs admit to paragraph 1 of the counterclaim.

2. Plaintiffs admit to paragraph 2 of the counterclaim.

3. Plaintiffs admit to paragraph 3 of the counterclaim.

4. Plaintiffs deny paragraph 4 of the counterclaim. The legal owners of Eva's Bridal of Illinois, Ltd., is Plaintiff/Counter-Defendant Said Ghusein and Ronia Ghusein.

5. Plaintiffs deny paragraph 5 of the counterclaim.

6. Plaintiffs deny paragraph 6 of the counterclaim. Nancy Ghusein's family owned only

one store. Nancy and Said Ghusein opened, established and operated and were the sole owners of eleven (11) bridal salons since they were married in 1977. One of those stores is the disputed store in this action, which is in Orland Park, IL.

      7.      Plaintiffs deny paragraph 7 of the counterclaim. Nayef Ghusein, who had been unemployed for several years, with a wife and kids, had no income and no experience, was hired by Nancy Ghusein, solely out of the goodness of her heart, to work at Eva's Bridal in Lansing Illinois in 1989, as an employee, for $250.00 per week. The Lansing store had already been established for at least one year. Exhibit A is the June 12, 1987 Lease for the Lansing store. It was open for operation, well stocked and staffed. Before Nayef Ghusein started working, the store already had a manager with over ten years of experience in the bridal business: Ms. Connie Fessett. Nayef could not get along with Ms. Fessett and was asked by her to leave.

      Since he had nowhere else to go and no job opportunities in the future, Said and Nancy Ghusein, again out of the goodness of their heart, relocated him to work at Eva's Bridal in Orland Park, in November, 1990. Said Ghusein did this because Nayef was his brother and did not want to see him out on the street with a wife and four children.

      Hala Ghusein went to work in her sister's beauty shop after graduation. When her sister closed the beauty shop, Hala, who was living with Nayef in the same house, was also out of work. Again, due to the fact that Hala was Said Ghusein's sister, Nancy offered Hala a job to work in the Orland Park store in January of 1989. Hala did not open the store with Nancy. Nancy and Said Ghusein opened the store IN July of 1988, before Hala was hired to work there. **Exhibit B** is the 1988 Lease for the Orland Park store. The store was fully staffed and in full operation long before Hala was hired.

As Hala mentions in paragraph #7 of her counterclaim, she started working at the store in January 1989. However, the store was leased in May, 1988; copy of the Lease is attached as **Exhibit B**. Nancy and Said Ghusein signed this Lease and two months later, the store was fully staffed and fully operational long before Hala was hired to work at the store as an employee.

The Orland Park store had two managers at that time, *Anne Gutnecht,* who had over ten years of bridal experience at Margies' Bridal, and *Laura Tetlow,* who was hired as an office manager with years of bridal experience from Margies; Hala was not even needed at the store. She had no prior experience, except as a shampoo girl in her sister's beauty shop. Nancy Ghusein hired her out of sheer kindness. Nancy left Eva's in Orland Park to establish another store in downtown Chicago; an unexpected opportunity has risen to purchase a store and she took it. Nancy did not leave because she did not get along with Hala. Hala was only one of Nancy's employees; *Hala worked for Nancy of her own free will and stayed there because she had no other job opportunities* or work experience. It is ludicrous for Hala to say that. Nancy left the store with two experienced managers: Anne Gutnecht and Laura Tetlow Oresky. These were the individuals who ran the store; Hala was new to the business and had no *previous bridal experience. Her only work experience was working in her sister's beauty shop.*

8.      Plaintiffs deny paragraph 8 of the counterclaim. Anne Gutnect and Laura Teltlow, along with the alteration manager, Georgia Michaels, threatened to resign because, as with the previous manager, Connie Fessett, they did not get along with Hala and Nayef. Nancy and Said transferred Ann, Laura and DGeorgia to work in their other locations rather than lose such experienced managers.

In November of 1990, Said and Nancy Ghusein had no choice but to either fire Nayef and

3

Hala, or offer to lease the Orland Park store to them. Hala and Nayef would run the store in Orland Park, with its complete inventory, in excess of $300,000; **Exhibit C** is a redacted inventory report (The full report is available for inspection.) In addition, Hala and Nayef received the accounts receivable, which was in excess of $250,000; they would be fully and personally responsible for all the fixtures and the entire operation in that location, including its assets and liabilities, such as rent, vendors, payroll, etc.

In November 1990, Hala and Nayef signed a store leasing agreement, which was drawn by an attorney, Mr. Earl Karno. Pursuant to said lease agreement, Hala and Nayef Ghusein will pay Said and Nancy Ghusein, a monthly leasing fee of $5,000 per month. Hala and Nayef Ghusein would keep all of the profits so long as that leasing agreement was in effect and Nayef and Hala continue to pay the agreed upon monthly leasing fee of $5,000 to Said and Nancy Ghusein. There were no other agreements made.

In return, Nayef and Hala would pay Said and Nancy $5,000 per month, but keep the rest of the profits from the store in Orland Park. **Exhibit D** is an accounting document in Nayef's own handwriting showing that he was paying $5,000 per month.

**Exhibit E** is the sales tax return for the Illinois Department of Revenue, which shows that Said Ghusein was still the legal owner of the store; the third pages all of his store locations, including Orland Park. Said Ghusein's signature appears above Taxpayer and the address is Eva's Bridal in Oak Lawn. Also with **Exhibit E** is a letter from plaintiff's attorney showing that plaintiffs were making payments for the Orland Park store, together with Said's record.

In March of 1997, Said and Nancy Ghusein were informed that the Orland Park Mall, where the Eva's Bridal store was located, will either be sold and renovated or closed down, see

**Exhibit F**.  Consequently, Said Ghusein wanted to run a "closing sale" or "lost our lease sale," which would generate hundreds of thousands of dollars.  Hala and Nayef did not have any money to buy the inventory and the fixture.  They again begged their brother Said to continue to lease the Orland Park store, but move it to a different location.  They again had "no where else to go" and so on and so forth.  Hala and Nayef were constantly behind in paying their rent in the Orland Park Mall, in paying the vendors, paying for advertisements and paying Said and Nancy Ghusein's monthly leasing fee of $5,000.

Nayef and Hala were also behind in payments of over $100,000 to Said and Nancy Ghusein pursuant to the Lease Agreement that required them to pay $5,000 per month.  The vendors were calling Said and Nancy for past due payments for Orland Park.  Hala and Nayef, with no where else to go, begged their brother Said Ghusein, again, to allow them to relocate the store, and reopen it using the same inventory and fixture, and even the same furniture.  They could not even buy a new couch for the store.  Since Said and Nancy Ghusein did not trust them again to run the store and meet their obligations and did not want the headache of all the creditors calling them as before, they rejected that offer.  However, constant pressure from the family caused Said to accept their offer on under certain conditions and stipulations.  Said did this without Nancy Ghusein's knowledge or consent.

Said Ghusein demanded that, the only way he would lease the store to Nayef and Hala again was by them form their own corporation and transfer all obligations to them personally.  Said did not inform his wife Nancy Ghusein of this.  Said Ghusein felt sorry for his brother and sister, and under pressure from his family, signed, by himself, a second agreement with them called "Limited License & Asset Transfer Agreement" that was drawn by Nayef's attorney and

friend, Mr. Richard Della Croce. This agreement is shown as **Exhibit A** to the Complaint.

Pursuant to this agreement, Said Ghusein would transfer the store and all of its obligations and assets to Hala and Nayef Ghusein for $10.00, *including the inventory, which is in the amount of $442,355.26 at whole sale cost (record of the inventory exists, and a redacted version is shown as* **Exhibit C***), and the accounts receivables in excess of $250,000.* In exchange, Nayef and Hala would pay $2,000 per month to Said and Nancy Ghusein and be completely responsible for everything in that store. Said Ghusein agreed to drop that monthly leasing payment from $5,000 to $2,000 per month to help then succeed in their new location. Subsequently a new *limited license agreement was signed that indicated Said Ghusein could terminate the agreement* upon *demand, s*ee **Exhibit G**.

9. Plaintiffs deny paragraph 9 of the counterclaim. See reply to paragraph #8 above.

10. Plaintiffs admit paragraph 10 of the counterclaim.

11. Plaintiffs admit as to the last half of paragraph 11 of the counterclaim, which refers to the $2,000 monthly payments to plaintiffs. However, the parties' understanding is clearly expressed in the Agreement, **Exhibit G**. Defendants' Exhibit A to their Counterclaim deals with different corporations and it is irrelevant to this case.

12. Plaintiffs deny paragraph 12 of the counterclaim. The contract was between Said Ghusein and Edward Fox. *It dated in 1996 when Said was still an owner of Eva's in Oak Lawn and Eva's in Orland Park, see* **Exhibit H**. There was no agreement made with Hala or Nayef Ghusein or Halanick Enterprises involving Said Ghusein and Edward Fox after 1998.

13. Plaintiffs deny paragraph 13 of the counterclaim. There was never a "three-way agreement" and no such "global lease agreement" ever existed.

14. Plaintiffs deny paragraph 14 of the counterclaim. Said and Nancy Ghusein entered into a leasing agreement with Edward Fox in 1996. Edward Fox was to use the space in Oak Lawn to sell his products. The Orland Park store was not involved at that time. A few months later, Edward Fox asked Said and Nancy if he could use the store in Orland Park to "deliver" products to the brides that have purchased from Edward Fox. It was only to deliver products. Since Hala and Nayef were only leasing the store during that time in 1996, Said Ghusein asked Hala and Nayef Ghusein if Edward Fox can do this; Hala and Nayef saw no problem with it and they allowed it for many years without receiving any money: it was implied consent.

There was never an agreement to pay Hala and Nayef for the delivery space in the store, which should have occupied no more than a small table. When Edward Fox decided to expand their operation to Orland Park, Said Ghusein told Edward Fox that he was not willing to relinquish one dollar from the agreed monthly payment that he was to pay him for the space in the Oak Lawn Store. If Nayef and Hala had a problem with Edward Fox in the Orland Park store, then Nayef and Hala should negotiate their own leasing arrangement with him, or any other photographer for that matter, or they could have asked him to leave at any time since there was no contract between Orland Park and Edward Fox.

Plaintiffs did not contract with Edward Fox for the benefit of the Orland Park store. Plaintiffs did not care whether or not Edward Fox delivered his products to the Orland Park store; they did not have any contract with Edward Fox for the Orland Park store. The delivery to the Orland Park store did not affect plaintiffs' contract with Edward Fox. Nayef and Hala could have stopped Edward Fox and asked him to move out at anytime they wished. In fact, they did

so early this year when they brought in a new photographer. Nayef and Hala benefited from Edward Fox's presence in their store. This is why they did not ask him to leave. Edward Fox is one of the largest and most established photographer in the Midwest area. He advertised a great deal with hundred of thousands of dollars in his advertising budget. Eva's in Orland Park was listed in all of his advertising at no cost.

      15.      Plaintiffs deny paragraph 15 of the counterclaim.

      16.      Plaintiffs deny paragraph 16 of the counterclaim.

Mr. Kam Sweis, owner of Eva's Bridal in Chicago, handled the advertising for all Four Eva's Bridal stores in the bridal magazines form 1980 to 1998. He wanted to stop because he was having difficult time collecting money from Nayef and Hala in the Orland Park store, (as were all the vendors and suppliers). Their share of the advertising budget was divided among the four Eva's Bridal stores, which was one-fourth (1/4). **Exhibit I** shows Nayef (a/k/a Nick) was paying one-fourth of the total cost.

Nayef turned over the advertising responsibility to Nancy Ghusein in 1998. Nancy Ghusein did not want to advertise the Orland Park store for Nayef and Hala. She wanted to close that store and sell the inventory. Nancy Ghusein had no interest in helping Nayef and Hala to advertise their store, nor to allow them to "pool" their money with the rest of her stores. At this point, Nancy did not need nor want any association with Nayef and Hala in business or otherwise, especially after what they did in the initial Lease Agreement from 1990 to 1998.

Nayef and Hala still owed Said and Nancy over $100,000 from that agreement, plus all the moneys that Said and Nancy paid on behalf of the store to the Landlord, vendors, attorneys, and others. Hala and Nayef kept the income and profits from the store and did not pay or meet

their obligations as they contracted and promised Said Ghusein. Again, and as it has become a habit of Hala and Nayef, they played on the sympathy of their brother Said Ghusein, and begged him to force his wife Nancy Ghusein to advertise their store in the Bridal magazines.

This caused martial problems between Nancy and Said, which ended in separation for months in 1998. The Orland Park store moved in 1998; it was in a brand new location and would not have survived without any advertisement. Nayef and Hala, with no money of their own, could not advertise their store on their own, nor would the Magazines have agreed to advertise for them without a credit history. Nancy and Said's approval was required since they owned the name Eva's Bridal. They have been using the name Eva's Bridal and advertising it for decades. It was Nayef and Hala who needed to pool with Nancy and Said; Nancy and Said never needed Nayef and Hala. Nancy was finally forced into advertising Eva's in Orland Park with the other Eva's stores in Illinois. Nayef and Hala agreed to pay one-fourth (1/4) of the total cost and at times did so as shown in **Exhibit I**. This arrangement continued from 1998 to the end of 2002 without any complaints from Hala and Nayef. They were happy and grateful for the heavy advertising in the bridal magazines, which Nancy was doing for them.

However, in 2002, Nayef and Hala would not pay their share of the advertising that has already been printed in February/March of the bridal magazines; this was the largest bridal issue of the year. They begged Said and Nancy to run the ads and once the magazine came out, they did not pay notwithstanding repeated demands; they still have not paid. Nancy and Said realized that they were playing the same game all over again. At this point, Said finally agreed with Nancy not to advertise the Orland Park store in the bridal magazines.

17. Plaintiffs deny paragraph 17 of the counterclaim.

18. Plaintiffs deny paragraph 18 of the counterclaim.

19. Plaintiffs deny paragraph 19 of the counterclaim. Not only Court determined that there was no fraud, but Marshall Fields has no relationship with any of the Eva's Bridal stores.

20. Plaintiffs deny paragraph 20 of the counterclaim. Hala and Nayef could have changed their business name and canceled the license agreement at any time, which was due to expire anyway, in 2003 per **Exhibit G**, but they did not. Nayef and Hala approached Said and requested to renew of the licensing agreement, which has expired. Said and Nancy presented Nayef and Hala with a new licensing agreement, which was drawn up by their attorney. See **Exhibit J**, which includes a cover letter with the proposed agreement.

21. Plaintiffs deny paragraphs 21 of the counterclaim. Nayef and Hala could have changed the name at any time and cancelled the license agreement, which expired anyway in 2003 per **Exhibit G**, and since it was not renewed, Said and Nancy Ghusein sent numerous "cease and desist letters", see **Exhibit K**.

22. Plaintiffs deny paragraph 22 of the counterclaim. Refer to 20 and 2l above. Hala and Nayef could have changed the name and advertised their new store with the bridal magazines at any time. Their membership with the Better Business Bureau, BBB, was cancelled by the BBB because they continued to list their store under Nancy Ghusein, as the owner (see **Exhibit L**). Nayef and Hala have never been accepted by the BBB for membership prior to 2003 under their own name; nor have they ever paid their own dues to the BBB. They were fraudulently using the membership and dues that were paid by Nancy and Said Ghusein until the BBB discovered that and cancelled them out of the listing, see **Exhibit L**.

Nancy and Said were accredited since 1985 by the BBB, see **Exhibit M**; and they won

many awards, such as the rare and prestigious BBB "complaint free award for the entire year of 2002" as well as "Best Couture Salon in the country award for 2002. She also won Chicago land City Search award for "Best Bridal Salon" for 2006, and the Southtown Finest 2004 Bridal Shop, see **Exhibit M.**

23. Plaintiffs deny paragraph 23 of the counterclaim. Hala and Nayef were only helping themselves by using an established name for over 30 years without having to pay for it nor honoring the terms of the license agreement. They were benefiting from the use of the name Eva's Bridal, not Said and Nancy. Said and Nancy were not reaping any benefits. Nayef and Hala continue, until today, to run their business by using the names and services of the other Eva's stores.

24. Plaintiffs deny paragraph 24 of the counterclaim. Said Ghusein only requested money that was owed to him. (Nayef and Hala were so far behind in paying Said Ghusein from the $5,000 per month agreement that they owed from the first lease agreement, 1991 to 1998, and the $2,000 per month that they owed from the second agreement, 1998 to present, that they owed Said Ghusein hundreds for thousands of dollars; notwithstanding this fact, they were still operating out of Said and Nancy's Eva store in Orland Park, reaping all the profits and refusing to relinquish the store or the name. Nayef and Hala had to either give back the store to Said Ghusein or pay him his money. However, they refused to do any of the above and continued to use every ploy and trick to keep the store, live off the name for free, and pocket the profits from Said's store. A very convenient illegal takeover of a good, profit making store with a great name.

**Exhibit N** is an accounting document in Nayef's handwriting showing that since 1991 he paid $298,800 and **Exhibit O** is an accounting document showing that the $298,800 deducted from the total owed to Said Ghusein leaves $321,021 unpaid.

25. Plaintiffs deny paragraph 25 of the counterclaim. Said and Nancy's stores still had better credit than Eva's Bridal in Orland Park, and they were still constantly being asked by vendors to pay Orland Park's bills. See attached **Exhibit P**.

26. Plaintiffs deny paragraph 26 of the counterclaim. Eva's of Orland Park would pay Said and Nancy with checks that had no money in the bank. Checks would be returned by their bank for NSF. Since they were so large, it would create a domino effect in the bank accounts of Said and Nancy Ghusein.

27. Plaintiffs deny paragraph 27 of the counterclaim. Said kept asking Nayef and Hala to pay him some of the money they owed him. Hala kept insisting and crying to Said, with the rest of the family, that she had no control over the financial dealings of the Orland Park store. She kept swearing that Nayef handled everything and would not allow her to pay Said any of the money that was owed to him. She even stated that Nayef was not paying her a salary and was pocketing all the money. She offered, however, to take a personal loan and give part of it to Said, if he would pay it back.

This was the $135,000 loan she took out, however, this loan was not all for plaintiffs' benefit; this loan was for other businesses and parties not in this action. The part of the loan that went for plaintiffs was fully refunded to Hala and plaintiffs have deposit slips to show that they deposited the money in Hala's personal account at La Salle Bank, see **Exhibit Q**. Meanwhile, Nayef was still not paying Hala a salary and pocketing all the money from the Orland Park store for his own personal use. He used some of that money that neither belongs to him or his sister to purchase a new house for $450,000.00 in Palos Hills in 2005.

28. Plaintiffs lack sufficient information to deny or admit paragraph 28 of the

counterclaim.

29. Plaintiffs deny paragraph 29 of the counterclaim. It is Nayef who owed Said hundreds of thousands of dollars.

30. Plaintiffs deny and admit all previous allegations as stated above.

31. Plaintiffs deny the first sentence in paragraph 31 of the counterclaim. Plaintiffs did keep the good will and good reputation of Eva's at a very high standard. Eva's Bridal in Oak Lawn won "people choice award and "grand champion award" salon as late as 2004. Nancy won three awards for her store in Chicago: The rare and prestigious BBB "complaint free award for the entire year of 2002" as well as "Best Couture Salon in the country award for 2002. She also won Chicago land City Search award for "Best Bridal Salon" for 2006, and the Southtown Finest 2004 Bridal Shop, see **Exhibit M**.

32. Plaintiffs deny paragraph 32 of the counterclaim. If the name and reputation of Eva's Bridal is so bad, then why are Nayef and Hala fighting so hard to keep using it? The purpose of this lawsuit is to stop them from using it. Plaintiffs never took any action to destroy their name and reputation. It was the plaintiffs who informed Hala and Nayef that they no longer wished to have any relationship with them; since they did not sign the new license agreement in 2003 and continued to refuse to pay arrears, they were asked to cease and desist from using the name on several occasions in front of witnesses as well as in writing that was faxed to them as well, **Exhibit K**.

Hala and Nayef received "unsatisfactory" report from the BBB, **Exhibit L**, while Nancy and Said received BBB's approval, **Exhibit M**. Hala agreed on several occasions to stop using the name, but Nayef refused. Again Hala claimed that she had no control over any decisions in that store and Nayef ran it and made all the decisions without consulting her.

13

33. Plaintiffs deny paragraph 33 of the counterclaim. Plaintiffs never abandoned their name, "Eva's Bridal." They continue to use it to this date.

34. Plaintiffs deny paragraph 34 of the counterclaim. The name "Eva's Bridal Ltd." was involuntarily dissolved without plaintiffs' knowledge. In fact, plaintiffs continued to use the name while it was dissolved. The agent for the corporation neglected to file the annual report without informing the plaintiffs. Once the plaintiffs realized this, they contacted an attorney to reinstate their name, but defendants had registered the name without plaintiffs' consent or knowledge and on the same day they were notified of plaintiff's lawsuit; it was done *in a malicious attempt to hurt plaintiffs' business.*

35. Plaintiffs deny paragraph 35 of the counterclaim. Not only Hala and Nayef never informed Said, but they registered the corporation under Nayef's name the same day he was informed that Said intended to file suit against him, March 20, 2007. It was a malicious act and a vindictive act. **Exhibit R.**

36. Plaintiffs deny paragraph 36 of the counterclaim.

37. Plaintiffs deny and admit all previous allegations as stated above.

*38.* Plaintiffs admit paragraph 38 of the counterclaim.

39. Plaintiffs deny paragraph 39 of the counterclaim. It is beyond ridiculous to allege that plaintiffs sought to destroy their corporation's name and reputation, which is currently their livelihood. This name was created in 1966 by Nancy Ghusein's mother, Eva Sweis, who left the name as a legacy for her daughter Nancy, and hence forth, from Nancy to her daughter Ronia, the third generation in this business. Said, Nancy and now their daughter Ronia work seven days a week to build their great reputation and they built the largest and greatest name in the bridal industry. No

other store won as many awards as their stores did.

The contract expired in 2003 pursuant to the limited license agreement, **Exhibit G**. Nayef and Hala refused to pay Said and Nancy the $321,000 that they owed in arrears and no new license agreement was signed.

Nayef and Hala's answer to plaintiff's amended complaint paragraph #10, alleging that they paid $20,000 to Said and Nancy is false; this money was repayment for the $20,000 they previously received. See **Exhibit S**, which also includes bounced checks from Nayef.

40. Plaintiffs deny paragraph 40 of the counterclaim.

41. Plaintiffs deny paragraph 41 of the counterclaim.

42. Plaintiffs deny and admit all previous allegations as stated above.

43. Plaintiffs deny paragraph 43 of the counterclaim.

44. Plaintiffs deny paragraph 44 of the counterclaim.

45. Plaintiffs deny paragraph 45 of the counterclaim.

46. Plaintiffs deny paragraph 46 of the counterclaim.

47. Plaintiffs deny paragraph 47 of the counterclaim.

48. Plaintiffs deny and admit all previous allegations as stated above.

49. Plaintiffs deny paragraph 49 of the counterclaim.

50. Plaintiffs deny paragraph 50 of the counterclaim.

51. Plaintiffs deny paragraph 51 of the counterclaim.

52. Plaintiffs deny paragraph 52 of the counterclaim.

53. Plaintiffs deny paragraph 53 of the counterclaim.

54. Plaintiffs deny and admit all previous allegations as stated above.

55. Plaintiffs deny paragraph 55 of the counterclaim. They were not personal loans; they were payments that defendants had to make pursuant to the Lease Agreement.

56. Plaintiffs deny paragraph 56 of the counterclaim.

57. Plaintiffs deny paragraph 57 of the counterclaim.

58. Plaintiffs deny paragraph 58 of the counterclaim.

59. Plaintiffs deny paragraph 59 of the counterclaim.

60. Plaintiffs deny and admit all previous allegations as stated above.

61. Plaintiffs deny paragraph 61 of the counterclaim.

62. Plaintiffs deny paragraph 62 of the counterclaim.

63. Plaintiffs deny paragraph 63 of the counterclaim.

64. Plaintiffs deny paragraph 64 of the counterclaim.

65. Plaintiffs deny paragraph 65 of the counterclaim.

66. Plaintiffs deny and admit all previous allegations as stated above.

67. Plaintiffs deny paragraph 67 of the counterclaim. These documents constitute forgery, which are **Exhibit T** hereto.

68. Plaintiffs deny paragraph 68 of the counterclaim.

69. Plaintiffs deny paragraph 69 of the counterclaim.

70. Plaintiffs deny paragraph 70 of the counterclaim.

**WHEREFORE**, Plaintiffs-Counter Defendants respectfully request that the Counterclaims against them be dismissed in their entirety, together with such other or further relief that this Court deems just and proper.

## **Affirmative Defenses**

1. All of the Counterclaims are barred by the statute of limitations.

2. The claimant, Hala Sarmiti, is not a party in this action and her Counterclaims should be dismissed.

3. The defendants' allegations do not satisfy all the elements that constitute a cause of action for fraud.

4. The defendants' allegations do not satisfy all the elements that constitute a cause of action for breach of contract. Contract expired in 2002 and was not renewed.

5. The defendants failed to state a cause of action upon which relief can be granted.

**WHEREFORE**. Plaintiffs-Counter Defendants respectfully request that the Counterclaims against them be dismissed in their entirety, together with such other or further relief that this Court deems just and proper.

Dated: February 16, 2008

Respectfully submitted,

_____
/S/ Maurice J. Salem
Attorney for Plaintiffs
7156 W. 127th Street, B-149
Palos Heights, Illinois 60463
Tel. (708) 277-4775
Fax. (708) 448-4515